Battue, J,
 

 We agree with his Honor that no judgment can be rendered against the defendant for the penalty of five hundred dollars, alledged to have been incurred by him for migrating into the State, and remaining hero contrary to law, after being notified to leave it. But we do not deem it necessary, or even proper, to decide the question upon which his opinion was based, because there is a preliminary objection apparent upon the record, which is fatal to the proceeding. We are thus, too, relieved of the necessity of considering the grave constitutional questions which have been argued before us. The 65th sec. of the 111th chap, of the Revised Statutes, “ concerning slaves and free persons of color,” declares that
 
 “
 
 it shall not be lawful for any free negro or mulatto to migrate into this State; and if he or she shall do so contrary to the provisions of this Act, and being thereof informed shall not, within twenty days thereafter, remove out of the State, he or she being thereof convicted in manner herein after directed, shall be liable to a penalty of five hundred dollars,” &c. In the record of the proceedings against the defendant, under this Act, it appears that the County Court of Richmond made an order, at its January Term, 1851,
 
 “
 
 that the sheriff of said county leave a written notice at the respective dwelling houses of Samuel Jacobs, and thirteen other persons, informing said persons that representations have been made to the Court, that they are colored persons, and have come into this State contrary to law, and that unless they leave the State within twenty days from the date of the notice, they will be proceeded against according to Act of Assembly.” At the next term of the Court in April, 1851, the sheriff returned upon the order: “Executed by leaving notice at the dwelling house of, or delivering to the persons of,” ten of the persons named in the order, among whom was the defendant, Samuel Jacobs. It is evident from this return, that it does not appear positively and distinctly that the notice to leave the State, within twenty days,
 
 *55
 
 was served personally on the defendant. The sheriff does not distinguish among the persons named, at whose dwelling house lie left a copy of the notice, or npon whom he served it personally. It must be taken, therefore, that he did not serve it personally upon the defendant, upon the maxim that
 
 de non apjparentibus et de non existentibus eadem est lex.
 
 Now we think it is clear that the Legislature intended that the information which it directed should be given to an immigrating free negro, should be communicated to him personally, in words, or by writing. The act is a highly penal one and must therefore be construed strictly. The proper meaning of the verb,
 
 to
 
 inform, in this connection, is
 
 “
 
 to make known to, by word or writing.” That this information was intended to be made to the party in person, is evident from the fact, that so short a time as twenty days, only, was allowed for acting upon it. Within that brief space he is to sell his property, collect and pay his debts, and make all other necessary arrangements for leaving the State forever. The time is short, very short, even if upon receiving personal notice he has the whole of it for the purpose of making his preparations for removal. The leaving the notice at his house, presupposes that he is not there to receive it in person. He may be absent from home, industriously engaged at work for some employer, or he may be on a journey, on some lawful errand, to a distant part of the same, or to an adjoining county, and may not return until the greater part, if not the whole of the twenty days, has expired. Would it be just that he should suffer so heavy a penalty for not having known or acted upon a notice, which had been left at his house twenty days before ? It cannot be so. The Legislature never intended .to act so oppressively towards a race to whom stern necessity has compelled it, in other respects, to deny so many of the privileges of freemen. The
 
 Attorney General
 
 virtually admitted this, but contended that the defendant had precluded himself from objecting to the insufficiency of the notice, by appearing at court, and tendering issues upon other questions to be tried by a jury. That would be so, undoubtedly, if the notice in question, had been
 
 *56
 
 any part of the process issued against the defendant to bring him into court. But in truth it had nothing to do with the process by which the defendant .was afterwards taken and bound over to appear at the County Court. It was something which was to be done on the part of the State to put the defendant in the wrong if he should disobey it. If not done as the law directed, the penalty never was incurred, and as the defect appears upon the record of the proceedings against the defendant he can now, in this Oourf, claim the benefit of it; for we are bound upon an inspection of the whole record to give such judgment, as ought to have been given in the Superior Court. 1 Rev. St., ch. 33, sec. 6.
 
 State
 
 v.
 
 Jackson,
 
 12 Ired. Rep., 329.
 

 Eor the defect to which we have adverted, the judgment of the Superior Court, arresting the judgment against the defendant, is directed to be affirmed, and this must, be certified to the said 'Court.
 

 Judgment affirmed.
 

 RlSR CURIAM.